IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| NATALIE AMOS, On Behalf of HERSELF and All Others Similarly Situated,<br>　　Plaintiff,<br><br>v.<br><br>LINCOLN PROPERTY COMPANY,<br>　　Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | COLLECTIVE ACTION<br><br>Civil Action No. 3:17-cv-0037<br><br>Judge Aleta A. Trauger |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S
MOTION TO COMPEL ARBITRATION AND STAY PROCEEDINGS**

### I.　　Introduction

Defendant Lincoln Property Company[1] has moved the Court to compel this case to arbitration pursuant to the Federal Arbitration Act, 9 U.S.C. § 1 *et seq.* ("FAA"). Plaintiff agreed to resolve any claim arising from her employment with LPC through final and binding arbitration, rather than through the courts. Plaintiff's claims in the present lawsuit indisputably arise out of her employment. By filing the lawsuit, Plaintiff has failed to honor her contractual obligations for which she received valuable consideration. As a matter of law, Plaintiff cannot pursue her Fair Labor Standards Act ("FLSA") claims related to her employment before this or any other court. Accordingly, Defendant's Motion should be granted.

### II.　　Brief Summary of the Facts and Argument

Lincoln Property Company, through its various affiliates, including Lincoln Apartment Management Limited Partnership ("LAM"), manages residential properties nationwide, including the Gale Lofts apartment complex in Nashville, Tennessee. Plaintiff Natalie Amos was employed by LAM as a leasing agent and later as a business manager from January 8, 2015 until

---

[1] As noted in its original answer, Lincoln Property Company is not a proper party to this case. Lincoln Property Company has no employees and never employed the Plaintiff. Plaintiff's employer during the relevant time period was Lincoln Apartment Management Limited Partnership.

November 6, 2016.[2] *See* Declaration of Lynn Fetzer, Ex. A at ¶ 4. At or near the time she joined LAM, Ms. Amos was provided with Lincoln's Employment Handbook. On the first page of the Handbook there is a paragraph that states in bold:

> **This Employee Handbook does, however, contain a binding Arbitration Agreement between you and Lincoln. Please review the Arbitration Policy carefully and understand that … your continued employment with Lincoln will acknowledge and confirm your agreement to binding arbitration as set forth in the Arbitration Policy . . . .**

The actual Arbitration Policy contained later in the Handbook is simple, broad, straightforward, and mutual in its application, scope and obligations. In exchange for employment, Plaintiff and LPC agreed as follows:

> It is understood and agreed that any claims or causes of action between you and Company, or any of its employees or agents, that arise in any way to your employment or termination from employment with Company, or any of the terms or benefits related to your employment – excluding claims covered by workers' compensation or as otherwise specifically excluded below – will be determined exclusively by final and binding arbitration.

Ex. A-1 at 43. Moreover, the Arbitration Agreement further states:

> This Arbitration Policy is intended to broadly cover the entire relationship between you and Company and includes, without limitation (except as specifically noted herein) … iii) any dispute, claim or controversy arising under any state or federal common law or state, federal or local statute or ordinance; iv) any dispute, claim or controversy relating to <u>compensation</u>, benefits, wrongful termination, discrimination, harassment, breach of contract, tort, or misappropriation of Company equipment or funds; and v) any other disputes, claims or controversies, whether at law, in equity or under statutes, ordinances, regulations, as amended, including but not limited to, <u>claims under the Fair Labor Standards Act</u>….

*Id.* at 44 (emphasis added).

In agreeing to be bound by the alternative dispute resolution process, Plaintiff and Lincoln preserved all of their substantive rights, chose a neutral forum in which to resolve their

---

[2] A true and correct copy of the Declaration of Lynn Fetzer is attached hereto as <u>Exhibit A</u> and fully incorporated herein by reference.

disputes, and agreed to waive any right to a jury trial. *Id.* In fact, the Arbitration Agreement states in bold:

> **You acknowledge and agree that, as part of this Arbitration Policy, <u>you and Company</u> (i) voluntarily waive and relinquish the right to file a lawsuit or other civil proceedings relating to the claims and causes of action that are subject to this policy, and (ii) voluntarily waive and relinquish the right to resolve the claims and causes of action that are subject to this policy in a proceeding before a judge and jury.**

*Id.* at 45.

Ms. Amos was provided with the Handbook and was later reminded that she needed to return an Acknowledgement, but she never did. Ex. A. at ¶ 4. Regardless, Ms. Amos knew about the Arbitration Policy and continued in her employment after obtaining that knowledge.

Ms. Amos not only obtained direct knowledge of the Arbitration Policy at or near the time she was hired, she independently knew of the policy in her capacity as Business Manager at Gale Lofts. In that role, Ms. Amos onboarded new employees at the property. *Id.* at ¶ 5. As part of that process, Ms. Amos was required to deliver the Handbook, explain the policies contained therein (including the Arbitration Policy), and collect signed acknowledgments. *Id.* As one example, Ms. Amos, hired and onboarded employee Adam Pruitt as a maintenance technician. Mr. Pruitt's "new hire" documents indicate that Ms. Amos interviewed him and reviewed multiple company policies, including the Employee Handbook Acknowledgment and Agreement to Arbitrate. *Id.*

Further, in her capacity as Business Manager at Gale Lofts, Ms. Amos acknowledged that she reviewed updates to company policies, including the arbitration agreement. *Id.* at ¶ 6. Ms. Amos also received on multiple occasions updates to the company's "new hire" documents, which included an arbitration agreement acknowledgment form. *Id.* Moreover, Ms. Amos attended training sessions, including the Tennessee Payroll 101 class, in which the arbitration agreement was reviewed and discussed. *Id.*

Accordingly, after full disclosure and knowledge, Ms. Amos and LPC freely and voluntarily agreed to arbitrate all claims related to her employment. Plaintiff has not honored her agreement. Instead, she filed a Complaint in the United States District Court for the Middle District of Tennessee. The legally binding and valid arbitration agreement mandate that this lawsuit be compelled to arbitration and the resolution of Plaintiff's FLSA claims must be adjudicated in that forum.

### III. Legal Analysis

**A. Governing Law.**

Federal law strongly favors arbitration and the enforceability of arbitration agreements. *Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25 (1983). The Federal Arbitration Act makes private agreements to submit disputes to arbitration valid and enforceable, and requires federal courts to enforce arbitration agreements in the same manner as it enforces all contracts. *See* 9 U.S.C. § 1, *et. seq.*; *see also Volt Info. Sciences v. Board of Trustees*, 489 U.S. 468, 474 (1989). In enacting the FAA, Congress declared a national policy favoring arbitration and required that all courts rigorously enforce such agreements. *Id.* Recognizing this legislative mandate, the United States Supreme Court has held that "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone Mem'l Hosp. v. Mercury Const. Corp.*, 460 U.S. 1, 24–25 (1983); *see also Broaddus v. Rivergate Acquisitions. Inc.,* 2008 WL 4525410, at *1 (M.D. Tenn. Oct. 1, 2008) (Campbell, J.) ("There is a strong presumption in favor of arbitration, and any doubts regarding arbitrability must be resolved in favor of arbitration."). Moreover, the United States Supreme Court has described the FAA provisions "as reflecting both a 'liberal policy favoring arbitration,' and the 'fundamental principle that arbitration is a matter of contract.'" *AT&T Mobility. LLC v. Concepcion*, 131 S. Ct.

1740, 1745 (2011) (citations omitted). "Courts must place arbitration agreements on an equal footing with other contracts, and enforce them according to their terms." *Id.* (citations omitted).

The Supreme Court has emphasized that disputes in the employment context are no different than any other under the FAA: agreements to arbitrate employment-related claims are broadly enforceable. *See Circuit City Stores. Inc. v. Adams*, 532 U.S. 105, 119–21 (2001). Section 3 of the FAA requires a court to stay proceedings if an issue before the court is arbitrable under an agreement covered by the FAA, and Section 4 directs the court to issue an order compelling arbitration if either party fails, neglects, or refuses to comply with the terms of the arbitration agreement. 9 U.S.C. §§ 3 & 4.

In deciding whether to compel arbitration, courts address two "gateway" issues: (1) whether there was an agreement to arbitrate between the parties; and (2) whether the agreement covers the dispute. *See Howsam v. Dean Witter Reynolds. Inc.*, 537 U.S. 79, 84 (2002); *see also Walker v. Ryan's Steak Houses Inc.*, 289 F. Supp. 2d 916, 921–22 (M.D. Tenn. 2003). In this case, the answer to both inquiries is "yes."

**B.     An Agreement to Arbitrate Exists.**

Within the FAA's mandate of broad enforceability of arbitration agreements, state contract law principles govern whether the parties have a contractually valid agreement to arbitrate in any given case. *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995). The requisites for forming a valid contract in Tennessee are well settled. Contracts require an offer, *Mason v. Pearson*, 668 S.W.2d 656, 660 (Tenn. Ct. App. 1983), an effective acceptance of the offer, *Finney v. Tarpley*, 686 S.W.2d 574, 580 (Tenn. Ct. App. 1984), and consideration. *Campbell v. Matlock*, 749 S.W.2d 748, 752 (Tenn. Ct. App. 1987). As evidenced by its plain language and assent to by Plaintiff, the Arbitration Policy meets the essential elements of an enforceable contract under Tennessee law. Further, the FAA requires arbitration agreements to

be written, but it does not require arbitration agreements to be signed. *Seawright v. Am. Gen. Fin. Services, Inc.*, 507 F.3d 967, 978 (6th Cir. 2007) (collecting cases); *see also Fisher v. GE Med. Sys.*, 276 F. Supp. 2d 891, 895 (M.D. Tenn. 2003).

The Sixth Circuit in *Seawright*, analyzed the enforceability of an arbitration agreement by answering four questions: (1) whether the employee's continued employment with the employer constituted assent to the agreement; (2) whether sufficient consideration existed to form a contract; (3) whether the arbitration agreement was illusory; and (4) whether the agreement was an unenforceable adhesion contract. *See id.* In this case, the answer to each of these questions mandates the enforcement of the Arbitration Agreement.

### 1. *Plaintiff's continued employment constituted her assent to arbitration.*

Plaintiff's employment with LPC constituted her assent to the terms of the arbitration agreement. The Court in *Seawright* reviewed the enforceability of the arbitration agreement according to the Tennessee law of contract formation and held that an employee was bound by her company's arbitration policy through her continued employment. *Id.* at 972.

The employer, AGF, introduced its arbitration policy and explained, "[s]eeking, accepting, or continuing employment with AGF means that you agree to resolve employment related claims against the company or another employee through this process instead of through the court system." *Id.* The court noted that Tennessee law "recognizes the validity of unilateral contracts, in which acceptance is indicated by action under the contract" and found that "Seawright expressed a valid assent when she continued to work for AGF." *Id.* at 972 (quoting *Fisher v. GE Med. Sys.*, 276 F.Supp.2d 891, 895 (M.D. Tenn. 2003)). The written arbitration materials given to the employees in *Seawright* "clearly stated that continued employment after the effective date of the arbitration program would constitute the employee's acceptance of the agreement to arbitrate. Thus, under Tennessee law, the employee expressed a valid assent when

6

she continued to work for the employer. *Id.* Accordingly, the employee's consent "came not from her silence in the face of an offer, but from her performance under the contract — that is, her continued employment." *Id.* at 973 n.2. The Court, therefore, held that continued employment can and does constitute acceptance. *Id.*

In this case, Amos agreed that her continued employment would "acknowledge and confirm" her agreement to binding arbitration. Handbook, Ex. A-1 at 1. LPC's employment of Plaintiff was sufficient consideration to make the Arbitration Agreement binding and enforceable.

2. *Sufficient consideration existed to form a contract.*

Plaintiff's and LPC's mutual promises were sufficient consideration to form a binding contract to arbitrate. *See Kyles v. TRG Customer Sols., Inc.*, 3-14-1674, 2014 WL 6908969, at *3 (M.D. Tenn. Dec. 5, 2014). In *Seawright,* the Sixth Circuit looked to whether there was sufficient consideration for an enforceable arbitration agreement. *Id.* at 974. Under Tennessee law, "mutuality of promises is 'ample consideration' for a contract [because a] mutual promise 'in itself would constitute a sufficient consideration.'" *Id.* (quoting *Pyburn v. Bill Heard Chevrolet*, 63 S.W.3d 351 (Tenn. Ct. App. 2001)). In *Seawright*, the arbitration process was binding on both the employer and the employee regardless of who requested arbitration. Thus, the "employer and employee were equally obligated to arbitrate those disputes falling within the coverage of the plan" and "[t]his is enough to ensure mutuality of obligation and thus constitute consideration." *Id.* The same is true here. All parties mutually consented to the Arbitration Agreement and agreed to submit any claim against each another to binding arbitration. *See* Fetzer Decl., Ex. A. at 2; Handbook, Ex. A-1 at 1. The parties' promises were sufficient consideration to enforce the Arbitration Agreement.

7

### 3. *The Arbitration Agreement is not illusory.*

Tennessee requires that a contract not be illusory, meaning that it must impose genuine obligations on both parties. *See Parks v. Morris*, 914 S.W.2d 545, 550 (Tenn. Ct. App. 1995) ("[I]f one or both parties to a contract have the right to cancel or terminate the agreement, then the contract lacks mutuality and is unenforceable."); *see also Howell*, 144 Fed. Appx. at 480 (finding mutuality requirement was satisfied simply because agreement required all disputes between the parties be resolved through arbitration). The Arbitration Agreement in this case meets that standard because it cannot be revoked or discontinued as to any known or pending claim and it survives the termination of Amos's employment. *See* Fetzer Decl., Ex. A at 2; Handbook, Ex. A-1 at 46. Thus, the parties share mutual obligations to be bound to the Arbitration Agreement.

### 4. *The Arbitration Agreement is an enforceable contract.*

The Arbitration Agreement is not an unenforceable adhesion contract. The Supreme Court has made it clear that "mere inequality in bargaining power [] is not a sufficient reason to hold that arbitration agreements are never enforceable in the employment context." *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 32, 111 S. Ct. 1647, 1655, 114 L. Ed. 2d 26 (U.S. 1991). State law on the enforceability of adhesion contracts applies. *Seawright*, 507 F.3d at 975. In Tennessee, an adhesion contract is "a standardized form offered on what amounts to a 'take it or leave it' basis, without affording the weaker party a realistic opportunity to bargain, and under conditions whereby the weaker party can only obtain the desired product or service by submitting to the form of the contract." *Id.*

As in *Seawright*, the Arbitration Agreement at issue here is not one of adhesion. The Arbitration Agreement contains no substantive limitations on Plaintiff's rights. It also imposes no onerous procedural requirements and is mutually binding on all parties. Plaintiff had the

option to reject the Arbitration Agreement and could seek employment elsewhere. Instead, Plaintiff agreed to arbitration and LPC employed her. The parties have a valid and enforceable agreement to arbitrate the claims in dispute. *See id.* at 976; *Johnson v. Long John Silver's Rests., Inc.*, 414 F.3d 583, 584 (6th Cir. 2005); *Howell*, 144 Fed. Appx. at 480; *Cooper v. MRM Investment Co.*, 367 F.3d 493, 500-01 (6th Cir. 2004) (upholding arbitration agreements); *Kyles*, 3-14-1674, 2014 WL 6908969, at *3.

### C. The Arbitration Agreement Covers This Dispute.

Because LPC and Plaintiff agreed that an arbitrator would resolve whether her claims are subject to arbitration, the Court should not assess whether Ms. Amos's claims are arbitrable. But, even if LPC and Amos had not agreed to submit all issues of arbitrability to an arbitrator, her claims fall within the broad arbitration provision in this case. The Arbitration Agreement requires arbitration of any claims or causes of action between the employee and LPC that arise in any way from or relate to the employee's employment to termination from employment with LPC. Employee Handbook, Ex. A-1 at 44. Further, the Arbitration Agreement expressly covers claims under the FLSA. *Id.*

### IV. Conclusion

Plaintiff agreed to pursue all disputes arising out of her employment with LPC through final and binding arbitration. The obligations in the Arbitration Agreement are reciprocal. Plaintiff's agreement to arbitrate with LPC is valid, covers the disputes raised in this lawsuit, and should be enforced. Arbitration, rather than a court of law, is the appropriate and chosen forum for resolution of Plaintiff's claims. LPC's motion to compel arbitration should be granted and this case should be dismissed, or, alternatively, stayed pending arbitration.

9
Case 3:17-cv-00037    Document 20    Filed 05/05/17    Page 9 of 10 PageID #: 62

Respectfully submitted,

**BELL NUNNALLY & MARTIN LLP**

/s/ *Mark A. Shoffner*
Jay M. Wallace, Texas Bar No. 20769200
(admitted *pro hac vice*)
Mark A. Shoffner, Texas Bar No. 24037490
(admitted *pro hac vice*)
3232 McKinney Avenue, Suite 1400
Dallas, TX 75204
Tel: 214-740-1400
Fax: 214-740-1499

**DICKINSON WRIGHT**

M. Reid Estes, Jr., #9043
Joshua L. Burgener #29077
424 Church St., Suite 1401
Nashville, TN 37219
Tel: 615-244-6538
Direct: 615/620-1737
Fax: 844-670-6009

**ATTORNEYS FOR DEFENDANT
LINCOLN PROPERTY COMPANY**

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing was served via the Court's electronic case filing system, upon the following counsel of record on May 5, 2017:

David W. Garrison
Joshua A. Frank
Timothy L. Miles
Barrett Johnston Martin & Garrison, LLC
Bank of America Plaza
414 Union Street, Suite 900
Nashville, TN 37219

/s/ *Mark. A. Shoffner*
Mark A. Shoffner

3227124_1.docx