IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| NATALIE AMOS, On Behalf of HERSELF and All Others Similarly Situated, | ) ) ) ) COLLECTIVE ACTION ) |
| *Plaintiff*, | ) CASE NO. 3:17-cv-37 |
| v. | ) ) JUDGE TRAUGER |
| LINCOLN PROPERTY COMPANY, | ) ) |
| *Defendant*. | ) |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S
MOTION FOR CONDITIONAL CERTIFICATION AND
<u>FOR THE ISSUANCE OF COURT-SUPERVISED NOTICE</u>**

**I.     INTRODUCTION & BACKGROUND**

This is an action for unpaid overtime wages brought by Plaintiff Natalie Amos ("Plaintiff") on behalf of herself and other similarly situated current and former Business Managers employed by Defendants. This collective action challenges Defendants' common policy of not paying Business Managers overtime for hours over 40 worked in a workweek in violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.*

Plaintiff was employed by Defendant as a Business Manager in Nashville, Tennessee. As a Business Manager, Plaintiff never directed the work of two full-time employees or the equivalent in at least one workweek to qualify as an exempt executive employee under the FLSA. Nevertheless, Defendant misclassified Plaintiff and other similarly situated Business Managers who did not direct the work of two full-time employees or the equivalent as exempt from the overtime provisions of the FLSA. Plaintiff and other Business Managers had the same job duties and regularly worked over 40 hours per week, but never directed the work of two full-time employees or the equivalent in at least one workweek and were not paid one and one-half times their regular rate of pay for hours worked in

1

excess of 40 in a workweek. Defendant violated the FLSA by misclassifying and failing to pay Plaintiff and other Business Managers proper overtime pay for hours over 40 in a workweek. *See* 207 U.S.C. § 207 (1) (employers must pay employees one and one-half times their regular rate for all hours worked over 40).

As set forth below, Plaintiff's testimony of this common policy easily meets the modest showing required under the Sixth Circuit's lenient conditional certification standard. In addition to the well-pled Complaint, in support of this Motion, Named Plaintiff Natalie Amos has submitted a detailed declaration showing that Defendant subjected her and other similarly situated Business Managers to uniform pay policies that have deprived them of overtime payments to which they are legally entitled.[1]

Because Plaintiff satisfies the lenient conditional certification standard, the Court should grant Plaintiff's Motion and approve the immediate issuance of judicially supervised notice to members of the proposed collective action, which is defined to include:

> All individuals who, during any time since January 10, 2014, have been employed as Business Managers at a property managed by Defendant who did not direct the work of two or more full-time employees or the equivalent in at least one workweek.

With binding Sixth Circuit precedent on her side and her supporting declaration and documentation, Plaintiff now moves this Court for conditional certification and the issuance of Court-supervised notice, pursuant to Section 16(b) of the FLSA, 29 U.S.C. § 216(b).

## II. FACTS

Plaintiff Amos worked for Lincoln Property Company from in or around September 2014 until in or around November 2016. Amos Decl. ¶ 2; Compl. ¶ 5. She worked for Lincoln Property through a temporary staffing agency from approximately September 2014 until approximately January 2015, when she was hired directly by Lincoln Property. *Id.* Her job title at that point was

---

[1] *See* contemporaneously filed Declaration of Natalie Amos ("Amos Decl.").

"Leasing Agent." In or around June 2015, she was promoted to the position of "Business Manager" at Gale Lofts, a residential property managed by Lincoln Property in Nashville, Tennessee. *Id.*

Plaintiff was expected to work well in excess of 40 hours each work week, but was paid only for 40 hours of work at an hourly rate of approximately $23.85. Amos Decl. ¶ 3. She was not compensated for any time worked in excess of 40 hours each week. *Id.* However, if she took any time off work during a particular week, that time was deducted by the hour from the 40 regular work hours for which she would normally be paid. *Id.* If she had sufficient paid vacation or sick leave, that would be applied by the hour to cover the time off. *Id.* It was her understanding that if she did not have sufficient paid vacation or sick leave, then the time off would be unpaid and deducted by the hour. *Id.*[2]

There was only one other full time employee who worked at Gale Lofts with Plaintiff, a Maintenance Supervisor, who completed maintenance work orders on the property and dealt with annual inspections, among other things. Amos Decl. ¶ 4. During Plaintiff's tenure as a Business Manager, there was also sporadically a single, part-time leasing agent, who, among other things, answered phones, gave apartment tours, and signed leases. *Id.* These part-time leasing agents never worked 40 hours at Gale Lofts. *Id.* Moreover, Plaintiff typically had no role in hiring staff and could not fire them. *Id.* In other words, Plaintiff *never* even worked with two or more full-time employees or the equivalent as a Business Manager at Gale Lofts. *Id.* (emphasis added).

As a Business Manager, Plaintiff also routinely worked more than 40 hours in a work week. Amos Decl. ¶ 6; Compl. ¶ 12. Her job duties as Business Manager included, among other things: (a) taking and returning calls from potential residents, residents, supervisors, and third-party

---

[2] Plaintiff's Complaint describes her pay as a salary, consistent with how Defendant has sometimes characterized it. Compl. ¶ 10-11. However, because of Defendant's practice of deducting pay for time off by the hour, Plaintiff contends that she was not actually paid a salary, but rather an hourly rate.

3

vendors; (b) responding to emails from potential residents, residents, supervisors, and third-party vendors; (c) offering tours of apartment units to potential residents; (d) signing leases and lease renewals; (e) processing work orders and responding to resident problems and complaints; (f) unlocking apartments for new resident move-ins and walking through properties and collecting keys for resident move-outs, including on weekends; and (g) being present in the office for regularly scheduled office hours at Gale Lofts from 8:30 a.m. to 5:30 p.m., Monday through Friday. Amos Decl. ¶ 6. She performed and was expected by Lincoln Property to perform the responsibilities listed above before, during, and after office hours, as well as on weekends. *Id.*

Lincoln Property did not record all of the hours that Plaintiff worked each week and did not pay her for any hours worked over 40 in a work week. Amos Decl. ¶ 7; Compl. ¶ 13. Additionally, Plaintiff regularly communicated with other Business Managers at Lincoln Property's properties, including 12 South Flats and Acklen Flats. Amos Decl. ¶ 7. Plaintiff also frequently visited these properties because the properties sometimes shared a floating leasing agent. *Id.* As a result, Plaintiff knows that Business Managers at other properties also did not have two other full-time employees working on their properties. *Id.* Accordingly, other Business Managers, like Plaintiff, did not direct the work of two full-time employees or the equivalent. *Id.*

Finally, based on Plaintiff's conversations with these other Business Managers who also do not direct the work of two or more full-time employees or the equivalent, and based on her knowledge of Lincoln Property's employment policies, she is aware that they are paid like her. Amos Decl. ¶ 9. Just like Plaintiff, they are expected to work in excess of 40 hours in a work week, but are paid for only 40 hours and not paid for any hours over 40 in a work week. *Id.* Moreover, time off was deducted from their 40 paid regular hours by the hour. *Id.*

Accordingly, Defendant has a common policy of misclassifying Business Managers who do not direct the work of two or more full-time employees or the equivalent as exempt and failing to

4

pay proper overtime at one and one-half times their regular rate for all hours worked over 40 in a week, in violation of the FLSA. Compl. ¶¶ 14, 17, 24.

## III. ARGUMENT

### A. Courts employ a two-stage certification process under the FLSA to facilitate early notice of collective actions.

The FLSA empowers employees who have been wrongfully underpaid to sue their employer, both on behalf of themselves and collectively on behalf of others who may be "similarly situated." 29 U.S.C. § 216(b). The collective action mechanism benefits employees by permitting them to pool resources and vindicate their rights and also benefits the judicial system by efficiently resolving a multitude of common claims arising from the same unlawful acts or practices. *Hoffman-LaRoche, Inc. v. Sperling*, 493 U.S. 165, 170 (1989).[3] However, for these benefits to be realized, potential plaintiffs must obtain accurate and timely notice of the collective action so that they can make informed decisions about whether or not to participate. *Hoffman-LaRoche, Inc.*, 493 U.S. at 170.

To facilitate early notice of collective actions, the Sixth Circuit uses a two-stage certification process. *Comer v. Wal-Mart Stores, Inc.*, 454 F.3d 544, 546-47 (6th Cir. 2006). The first, or "notice," stage "takes place at the beginning of discovery." *Comer,* 546 F.3d at 546-47. The second, or "decertification," stage occurs after "all of the opt-in forms have been received and discovery has concluded." *Id.* (quoting *Goldman v. RadioShack Corp.,* No. Civ. A. 2:03-cv-0032, 2003 WL 21250571, at *6 (E.D. Pa. Apr. 16, 2003); *Morisky v. Public Serv. Elec. & Gas Co.*, 111 F. Supp. 2d 493, 497 (D.N.J.2000)).

---

[3] *Hoffman-LaRoche, Inc.* involved an Age Discrimination in Employment Act ("ADEA") claim, rather than an FLSA claim. However, as the Supreme Court explained in that case, the ADEA collective action mechanism is the same as that in the FLSA. *Hoffman-LaRoche, Inc.*, 493 U.S. at 170.

5

### B. Conditional certification and notice are typically granted because a modest factual showing is sufficient.

#### 1. The standard required for certification at the notice stage is lenient.

By its nature, certification of an FLSA collective action at the "notice stage" is conditional, and requires only a "modest factual showing" that existing and potential plaintiffs have been victims of a common policy or plan violating the FLSA, or that some factual basis exists to support the claims of illegal action across a broad class. *Comer*, 454 F.3d at 546-47 (citations omitted); *White v. MPW Idus. Servs.*, 236 F.R.D. 363, 366-67 (E.D. Tenn. 2006); *Belcher v. Shoney's Inc.*, 927 F. Supp. 249, 251 (M.D. Tenn. 1996) (Campbell, J.).

The Sixth Circuit has emphasized that a plaintiff seeking certification "must show only that 'his position is ***similar, not identical***, to the positions held by the putative class members.'" *Comer*, 454 F.3d at 546-47 (quoting *Pritchard v. Dent Wizard Int'l*, 210 F.R.D. 591, 595 (S.D. Ohio 2002)) (emphasis supplied); *see also Wilks v. Pep Boys*, No. 3:02-cv-0837, 2006 WL 2821700, at *3 (M.D. Tenn. Sept. 26, 2006) (Trauger, J.) ("[E]ven at the decertification stage, *similarly* situated does not mean *identically* situated.") (emphasis in original).

The Sixth Circuit has also held that the determination of whether plaintiffs and a putative class are similarly situated is made "using a ***fairly lenient standard***, and ***typically results in 'conditional certification'*** of a representative class." *Comer*, 454 F.3d at 547 (quoting *Morisky*, 111 F. Supp. 2d at 497) (emphasis supplied) (internal quotation marks omitted); *see also Lindberg v. UHS of Lakeside, LLC*, 761 F. Supp. 2d 752, 758 (W.D. Tenn. 2011) ("Because the determination at this stage is made using a fairly lenient standard, the Sixth Circuit has recognized that it typically results in conditional certification of a representative class.") (internal quotation marks omitted). This Court has emphasized this in its own conditional certification decisions. *E.g.*, *Potts v. Nashville Limo & Transp., LLC*, No. 3:14-CV-1412, 2015 WL 4198793, at *4 (M.D. Tenn. July 10, 2015)

6

(Trauger, J.) ("[T]he court should use 'a fairly lenient standard [that] typically results in . . . certification.'") (citations and internal quotation marks omitted); *see also Rogers v. HCA Health Servs. of Tenn., Inc.*, No. 3:09-CV-1173, 2013 WL 3224026, at *1 (M.D. Tenn. June 25, 2013) (Sharp, J.) (The lenient standard applicable at the notice stage "typically results in conditional certification of a representative class") (citation omitted).

Moreover, "[a]t this first stage of conditional certification, the court 'does not resolve factual disputes, decide substantive issues going to the ultimate merits, or make credibility determinations.'" *Bradford v. Logan's Roadhouse, Inc.*, 137 F.Supp.3d 1064, 1072 (M.D. Tenn. 2015) (Trauger, J.) (citation omitted). Nor does the Court delve into any formal evidentiary analysis. *E.g.*, *Rogers*, 2013 WL 3224026, at *2 ("[T]he Court is not concerned with the admissibility of evidence; rather, it looks for 'some factual basis from which [it] can determine if similarly situated potential plaintiffs exist.'").

### 2. The lenient standard at the notice stage ensures potential plaintiffs are aware of an action, so that they may join to toll the statute of limitations on their claims.

"[S]ending notice to potential class members early in a case facilitates the broad remedial purpose of the FLSA and promotes efficient case management." *Frye v. Baptist Memorial Hosp., Inc.,* No. 7-2708, 2008 WL 6653632, at *7 (W.D. Tenn. Sept. 16, 2008) (citation omitted). In FLSA collective actions—unlike Rule 23 class actions—the statute of limitations for the FLSA claims of potential opt-in plaintiffs is ***not tolled*** by a plaintiff's initial filing of the complaint. 29 U.S.C. § 256(b). Thus, undue delay in disseminating notice to potential plaintiffs can prejudice their rights. *See Gortat v. Capala Bros., Inc.*, No. 07-cv-3629, 2010 WL 1423018, at *9 (E.D.N.Y. Apr. 9, 2010) ("Because the statute of limitations for FLSA claims continues to run for each individual plaintiff until he or she opts in . . . early certification and notice are favored in order to protect plaintiffs' rights.").

7

Therefore, "it is important that notice of the collective action be given to all potential opt-in plaintiffs as soon as practicable so they can decide whether to participate in the lawsuit." *Atkinson v. TeleTech Holdings, Inc.*, No. 3:14-CV-253, 2015 WL 853234, at *2 (S.D. Ohio Feb. 26, 2015); *accord Smith v. Lowe's Companies, Inc.*, No. 2:04-cv-774, 2005 WL 6742234, at *3-4 (S.D. Ohio May 11, 2005) (Because "statute of limitations period continues to run against each potential class member . . . it is **widely accepted** that, at the notice stage . . . the plaintiff's burden . . . is **extremely light.**") (emphasis added); *Houston v. URS Corp.*, 591 F. Supp. 2d 827, 831 (E.D. Va. 2008) ("Because the statute of limitations continues to run on unnamed class members' claims until they opt into the collective action, *see* 29 U.S.C. § 256(b), courts have concluded that the objectives to be served through a collective action justify the conditional certification of a class of putative plaintiffs early in a proceeding, typically before any significant discovery . . . .") (citing *Castillo v. P & R Enters., Inc.*, 517 F.Supp.2d 440, 444 (D.D.C.2007)).

At the same time, conditional certification presents little risk of harm. Conditional certification is just that—conditional. This is because, "[a]fter the completion of discovery, and upon the filing of a motion for decertification, the court can make a more informed decision about whether class members are "similarly situated."" *Frye v. Baptist Memorial Hosp., Inc.*, No. 7-2708, 2008 WL 6653632, at *7 (W.D. Tenn. Sept. 16, 2008) (citation omitted).

### C. Plaintiff has satisfied the lenient standard of showing that she and all members of the proposed collective action are similarly situated.

As demonstrated above, Plaintiff has satisfied her modest burden at this initial stage by presenting evidence showing that she and all other members of the proposed collective action are similarly situated. Plaintiff has demonstrated that she and other similarly situated Business Managers did not direct the work of two or more full-time employees or the equivalent and were denied overtime pay for hours worked over 40 in a week. Like Plaintiff, these other Business

8

Managers had the same job duties and were paid the same way. Thus, the challenged pay policy was common to all Business Managers that did not direct the work of two or more full-time employees or the equivalent in at least one workweek. Thus, Plaintiff has more than satisfied her modest burden at this initial stage. *See, e.g.*, *Rogers*, 2013 WL 3224026, at *3 (granting conditional certification based on plaintiff's complaint and declaration because the FLSA's "broad remedial goal" outweighed "burdens posed by conditional certification").

In sum, Plaintiff's allegations challenge a common policy and practice that applies to all members of the proposed collective action, and Defendant's liability for these claims can be effectively and efficiently resolved on a collective basis. Plaintiff and those she seeks to represent are similarly situated within the meaning of 29 U.S.C. § 216(b), and, as a result, Plaintiff has easily met the lenient standard for conditional certification of the proposed collective action.

### D. The Court should order notice to potential plaintiffs.

Having met the burden for conditional class certification, Plaintiff now needs the Court's assistance in notifying potential plaintiffs of their right to join this collective action. Absent the Court's intervention, Plaintiff will be unable to locate and notify all of the potential plaintiffs in this action, and the statute of limitations on their claims will continue to run.

Under the FLSA, Plaintiff may request judicial involvement in notifying similarly situated persons of their right to join the lawsuit, and the Court is permitted to assist Plaintiff in giving notice. *Comer*, 454 F.3d at 546 (citing *Hoffman-LaRoche, Inc.*, 493 U.S. at 169). Here, because Plaintiff and those she seeks to represent are "similarly situated," as defined by 29 U.S.C. § 216(b), she "[is] entitled to look into the matter further, and to do so [sh]e needs to provide notice of their claims to other [similarly situated employees]." *Shabazz v. Asurion Ins. Serv.*, No. 3:07-cv-0653, 2008 WL 1730318, at *5 (M.D. Tenn. Apr. 10, 2008) (Echols, J.).

9

There are likely hundreds of potential plaintiffs who are similarly situated to Plaintiff,[4] and Plaintiff does not have the ability to determine all of their names and addresses. Without this information, notice cannot be sent, and the statute of limitation on potential plaintiffs' claims will continue to run as long as they remain unaware of their right to join this action. The purpose of the notice stage of collective action certification is to provide timely notice to potential plaintiffs. Accordingly, judicial intervention at this stage of the litigation will benefit all parties involved by furthering judicial economy and ensuring that the rights of every potential plaintiff are protected.

### E. The Court should order the issuance of Plaintiff's Proposed Notice and adopt Plaintiff's proposed notice procedure.

The Sixth Circuit has left it to the district courts to establish the specific procedures to be followed in providing notice to potential plaintiffs in FLSA actions. *Comer,* 454 F.3d at 548. Thus, having demonstrated that notice is warranted, Plaintiff proposes the following procedures to facilitate class notice to potential plaintiffs. Plaintiff requests that this Court require Defendant to produce a list of the names, as well as the last known addresses and email addresses for:

> All individuals who, during any time since January 10, 2014, have been employed as Business Managers at a property managed by Defendant who did not direct the work of two or more full-time employees or the equivalent in at least one workweek.

Plaintiff will use this list to send Court-approved notice to potential plaintiffs of their right to join this action. Plaintiff proposes sending the attached Notice of Pending Fair Labor Standards Action Lawsuit (attached hereto as <u>Exhibit 1</u>) and Opt-in Consent Form (attached hereto as <u>Exhibit 2</u>) to all of the employees identified by Defendant. The language and formatting of this proposed Notice has been modeled after other FLSA notice forms approved in similar home health cases in the Middle District of Tennessee.

By approving the proposed Notice and Consent forms, the Court will help ensure the

---

[4] Lincoln Property Company's website touts that it currently manages approximately 170,000 units. *See* http://www.lincolnapts.com/about.

accuracy and legitimacy of the communications about this action to potential plaintiffs who may be uncertain of their rights under the FLSA or who fear retaliation by their employer.

## IV. CONCLUSION

For the foregoing reasons, Plaintiff requests that the Court conditionally certify this collective action and order the issuance of notice to potential plaintiffs.

Date: May 26, 2017

Respectfully submitted,

/s/ David W. Garrison
**DAVID W. GARRISON (No. 24968)**
**TIMOTHY L MILES (No. 21605)**
**JOSHUA A. FRANK (No. 33294)**
BARRETT JOHNSTON MARTIN & GARRISON LLC
414 Union Street, Suite 900
Nashville, TN 37219
Telephone: (615) 244-2202
Facsimile: (615) 252-3798
dgarrison@barrettjohnston.com
tmiles@barrettjohnston.com
jfrank@barrettjohnston.com

## CERTIFICATE OF SERVICE

      I hereby certify that a true and correct copy of the foregoing *Memorandum in Support of Plaintiff's Motion for Conditional Certification and for the Issuance of Court-Supervised Notice* was served via the Court's electronic case filing system, upon the following counsel of record on May 26, 2017:

**JAY M. WALLACE**
**MARK A. SHOFFNER**
Bell Nunnally & Martin, LLP
3232 McKinney Avenue, Suite 1400
Dallas, TX 75204
Telephone: (214) 740-1400
Facsimile: (214) 740-1499
jwallace@bellnunnally.com
mshoffner@bellnunnally.com

**M. REID ESTES, JR. (TN Bar No. 9043)**
**JOSHUA L. BURGENER (TN Bar No. 29077**)
DICKINSON WRIGHT, PLLC
424 Church St., Suite 1401
Nashville, TN 37219
Telephone: (6150 244-6538
Direct: (615) 620-1737
Facsimile: (8440 670-6009
restes@dickinsonwright.com
jburgener@dickinsonwright.com

*Attorneys for Defendant*

                                              /s/ David W. Garrison
                                              DAVID W. GARRISON
                                              **BARRETT JOHNSTON**
                                                    **MARTIN & GARRISON, LLC**